Booth, Judge,
delivered the opinion of the court.
This case is now before the court, having been remanded for reassessment of damages as set forth in the opinion of the Supreme Court, United States v. Mille Lac Band, etc., 229 U. S., 498.
The order of remand, found on page 510 of the opinion, reads as follows:
“The Court of Claims gave no effect to the proviso to section 6, and the findings afford no basis for separating the damages rightly recoverable from those erroneously assessed on account of lands disposed of under preemption and homestead entries allowed prior to the act of 1889. The case must therefore be remanded for a reassessment of the damages.”
The record in the case before this court on its first trial afforded no means of “ separating the damages rightfully recoverable from those erroneously assessed,” etc., and in response to the allowance of a motion for leave to take additional testimony a more complete record has been presented, and from which the findings of fact have been adduced.
In making up the judgment the court has followed the express language of the opinion of the Supreme Court, and the various items allowed rest wholly upon the theory that the lands for which judgment is awarded should have been disposed of in strict conformity with the act of 1889.
The United States is given credit for 29,335.50 acres of homestead and preemption entries, all of which were entered prior to the act of 1889, and most of which passed to patent subsequent to said act in virtue of the proviso to section 6 thereof. The principal controversy in reference to this item arises over what is technically described as soldiers’ additional scrip. This total acreage of 17,350.79 is described in the record as soldiers’ additional homestead. It seems to us quite useless to enter into a technical discussion as to the distinction between this particular class of entries and what is known as homestead rights. In the adminis *405 tration. of land affairs by tbe Land Office these two classes of lands are segregated, and the various statutes under which these rights are acquired are separate and distinct. Nevertheless, it seems to us that when the Supreme Court used the words “ all existing preemption and homestead entries” it was intended to include all entries which, in their essence, originated in homestead rights and would be known generally as homestead entries. It is true that all these entries were made upon the same day and covered a vast extent of territory. Nevertheless, they were in effect substantially all the homestead entries that were pending for patent at the time of the passage of the act of 1889 and were considered by the Land Office as the very lands mentioned in the proviso to section 6 and subsequently patented prior to the joint resolution of Congress passed in 1893. Comparatively few patents of any description had been granted for entries made prior to January 14, 1889, and if these lands are to be exempt the proviso to section 6 would have practically nothing upon which to operate. It appears that 1,709.08 acres were entered prior to and canceled after 1889 as final homesteads. The record discloses that the cancellation followed a failure on the part of the entrymen to comply with the land laws subsequent to 1889. These entries were valid in every respect, and the failure to receive patent was due entirely to the failure of the entrymen to pursue their rights under the statute to a final conclusion. They were, we think:, valid subsisting homestead entries at the time of the passage of the act of 1889.
Subsequent to the remand of this case the Land Office made a careful and detailed examination of its records in response to a call from this court, and made a report wherein it was disclosed that on January 1,1890, .there were 32,309.19 acres of land upon said reservation upon which there was at the time no valid subsisting preemption or homestead entry. Following this report the Government proceeded to take testimony, and said acreage was personally examined and classified and the character and quantity of timber estimated by an expert employed for the purpose. In going over the present record, however, the court has reduced this acreage a rather insignificant amount.
*406 The act of January 14, 1889, first imposed upon the Commissioners of the General Land Office the duty of surveying all of said Indian lands, and thereafter the Secretary of the Interior was to appoint competent and experienced examiners to classify the same into pine and agricultural lands. In order to accomplish this purpose the Secretary of the Interior, through the Land Office, promulgated certain rules and regulations to be followed in administering the aforesaid law. In making up the judgment in this case the court has followed said rules and regulations in all their detail.
Judgment is awarded upon the basis of a credit to the Indians of 31,692.64 acres, and is made up of five distinct classes of entries. The first embraces an item of 3,022.32 acres of land taken by the State of Minnesota under its organic act for school purposes and generally known as school lands. These entries are of course not homestead or preemption lands and, following the language of the Supreme Court, not embraced within the proviso to section 6 of the act of 1889.
The next item embraces homestead and preemption entries made upon 28,246.87 acres of land subsequent to the passage of the act of 1889, all of which went to patent after said act in pursuance of the joint resolutions of 1893 and 1898. The most troublesome item included within the last-mentioned acreage is 17,082.38 acres of land known as railroad indemnity selections. These railroad selections were made by at least two railway companies many years prior to the passage of the act of 1889. They never went to patent and were all canceled by the General Land Office subsequent to 1889, and, in fact, at the time of the passage of the act of 1889 and prior to the act of 1884 were all suspended awaiting the final action of the Land Office. The railway companies never acquired any portion of said lands; on the contrary, they were, subsequent to the passage of the joint resolution of 1898, entered as homestead and preemption entries and patented .by the Land Office under the above-mentioned resolutions. They were never homestead or preemption entries in the technical signification of those terms, and the Land Office in making its report to this court did not treat them as such.
*407 The remaining items, three in number, embrace small entries made subsequent to the passage of the act of 1889 under distinct laws, in no event to be characterized as homestead or preemption entries.
It is needless to discuss in detail the methods employed in arriving at the classification and amount of timber upon said lands, as we have followed in this respect the report of the expert employed by the defendant, made from a personal examination of practically every acre of pine lands upon said reservation.
The court has deducted from the amount of timber the total number of feet taken from said reservation prior to the passage of the act of 1889. This has been done upon the theory that said timber, having been removed prior to the composition and agreement of the disputes between the Mille Lacs and the United States, could not have been embraced within the final settlement of said disputes; that is, the act of January 14, 1889.
The court has also deducted the expense which would have accrued to the Mille Lac Indians if the lands embraced within their reservation had been disposed of under the act of 1889. Section 7 of said act provided for the payment of expenses incident to its administration, and the opinion of the Supreme Court expressly commands this court to treat the rights of the claimants as they accrued to them under the express provisions of said act. We have not, however, included in this deduction any of the expenses incident to the allotment of Mille Lac Indians upon the White Earth Reservation. The proportion of the same due from the Mille Lacs has already been paid from the general fund realized from the sale of all the timber upon all the reservations, and inasmuch as the Mille Lacs were fully entitled to participate in said general fund, and as the total amount of this judgment becomes a part of said general fund, it would in effect constitute a double payment to require them to again pay any portion of the expenses of allotment.
In ascertaining the interest due we have followed closely the regulations of the Department of the Interior in respect to the payment of interest upon the funds realized from the sale of timber on the other reservations. This matter is set *408 forth in detail in Finding VI and has been adopted by the court in compliance with the language of the opinion of the Supreme Court, wherein we are commanded to follow strictly the act of 1889.
In the assessment of damages we have followed the basis of prices which would have obtained had the act of 1889 been rightfully applied.
In addition to this we have set forth in Finding VIII the classification and full value of the timber upon the soldiers’ additional homestead lands. We would have pursued a similar course with respect to the railroad indemnity lands, but it was quite impossible from the record to do so, inasmuch as they could not be segregated from the homestead entries thereon subsequent to the passage of the act of 1889.
Judgment is awarded the claimants in the principal sum of $509,510.43, and interest thereon in the sum of $203,318.04, making a total amount of $711,828.47 for which judgment is awarded, but of this total only the principal sum of $509,510.43 shall bear interest, interest upon the said principal sum being payable from and after December 6,1915.
It is so ordered.